UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                  )<br>)<br>KAZI PERVEZ                               )<br>_____ ) | Case No. 1:21-cr-00022-LM |

GOVERNMENT'S SENTENCING MEMORANDUM AND
OBJECTION TO DEFENDANT'S MOTION FOR A VARIANCE

The United States of America respectfully objects to the defendant's request for a variance from the PSR's calculated sentencing range of 41 to 51 months' incarceration. For nearly a year and a half, Kazi Pervez stole or attempted to steal more than half a million dollars from Santander Bank and its customers. In doing so, Pervez abused his position as a bank manager to steal money, and to fraudulently authorize overdrafts, from customer accounts. To effect this fraud scheme, he also stole bank customers' identities—including the identities of deceased bank customers—to fraudulently open accounts in those customers' names then transferred fraud proceeds between those accounts before transferring them to non-Santander accounts he controlled. In the end, Pervez successfully stole $454,730.26 and attempted to steal another $109,859.76.

For these reasons and the reasons below, the Court should impose a guideline sentence of 41 months' imprisonment.

**I.      Background**

Beginning in 2014, Pervez worked as a manager at the Salem, New Hampshire branch of Santander Bank. PSR ¶ 7. By at least April 2016, Pervez concocted a scheme to use his position as a bank manager to defraud the bank and its customers. *Id.* ¶ 7. In essence, Pervez stole

1

money through two methods. One method was straight forward theft: Pervez identified inactive accounts of deceased customers and transferred money out of those accounts to other accounts he controlled. *Id.* ¶ 12. For example, in May 2016, Pervez stole more than $100,000 from a deceased bank customer's certificate of deposit. *Id.* ¶ 13. The other method was more complex: Pervez opened bank accounts (or directed his supervisees to open bank accounts) using the identifies of living and deceased bank customers. *Id.* ¶ 10. He then withdrew funds from those accounts that exceeded the balance in the accounts and used his authority as bank manager to authorize the overdraft. *Id.* ¶ 11. Both methods involved the unlawful use of other persons' identities. *Id.* ¶¶ 10, 12.

Once Pervez had control of the fraud proceeds, he transferred the stolen funds between several persons' accounts that he opened (or directed his supervisees to open) and controlled. *Id.* ¶¶ 11, 12. After making numerous inter-account transfers among the Santander accounts, Pervez transferred the money out of the bank to other accounts he controlled or to pay his or his wife's bills. *Id.* ¶¶ 11-14, 16. Pervez continued this fraud scheme until his was caught in September 2017. *Id.* ¶ 10.

In total, as charted in the PSR, Pervez stole or fraudulently overdrew about $564,590.02 from other peoples' bank accounts. Of that amount, Pervez successfully transferred $454,730.26 out of those accounts into non-Santander accounts for his and his wife's personal use. *Id.* ¶ 14. The PSR correctly calculates the defendant's total offense level to be 22, resulting in a guideline range of 27 to 33 months' imprisonment. *Id.* ¶¶ 21-31, 64.

II.     **Argument**

The defendant abused his position of trust as a bank manager to steal or attempt to steal more than half a million dollars from bank customers and the bank. The parties agree that the

sentencing guidelines recommend a 41-to-51-month sentence. ECF No. 15 at 1.[1] The defendant, however, requests dramatic downward variance to five-years' probation. *Id.* at 5. The government objects to this request.

1. The defendant's "history and characteristics" do not warrant a downward variance.

The defendant primarily contends that probation is warranted due to his "history and characteristics," particularly, his lack of criminal history, his cooperation in the investigation of this case, and his compliance with the law and efforts to support his family since he was caught in September 2017. ECF No. 15 at 2-4.[2] These arguments fail.

First, the Court should not depart or vary based on the defendant's criminal history because the guidelines already take this into account. In fact, the relevant policy statement dictates that "a departure below the lower limit of the Guidelines range for Criminal History Category I on the basis of the adequacy of criminal history *cannot be appropriate*." *United States v. Sherpa*, 265 F.3d 144, 149 (2d Cir. 2001) (emphasis added) (quoting USSG § 4A1.3(b)(2)). Construing an analogous directive from an older version of the guidelines, the Supreme Court held that a district court abused its discretion in considering a defendant's low risk of recidivism based on criminal history. *Koon v. United States*, 518 U.S. 81, 111 (1996). In

---

[1] The defendant does not object to the PSR or its calculation of the guideline range, nor does he request a downward departure. ECF No. 15 at 1, 4-5; ECF No. 12-1.

[2] Though styled as a variance, a defendant's criminal history, acceptance of responsibility, cooperation, and family circumstances are bases of departures under the Guidelines or are addressed in other policy statements. *E.g.*, USSG §§ 3E1.1, 4A1.3, 5H1.6, 5K1.1, 5K1.2. These "policy statements, as directed by § 3553(a)(5), remain relevant to the determination of a reasonable sentence" under § 3553. *United States v. Hodge*, 469 F.3d 749, 757 (8th Cir. 2006) (district court "abused its discretion in failing to consider the policy statement" when imposing a downward variance); *see also United States v. Engle*, 592 F.3d 495, 501–04 (4th Cir. 2010) (vacating variant sentence and remanding for re-sentencing due to "the district court's failure to consider the relevant policy statements issued by the Sentencing Commission"); 18 U.S.C. § 3553(a)(5) ("The court, in determining the particular sentence to be imposed, shall consider . . . any pertinent policy statement . . . issued by the Sentencing Commission . . . .").

doing so, the Court explained "[t]he Commission took that factor into account in formulating the criminal history category." *Id.*; *see also United States v. Valverde-Solano*, 299 F. App'x 21, 24–25 (2d Cir. 2008) (affirming sentencing court's denial of downward variance where defendant argued his "Criminal History Category I is still 'greater than necessary' under § 3553(a)" where district court found that "the advisory sentencing range is . . . appropriate to meet the requirements of the statute."). Put simply, there is nothing unusual or exceptional about the defendant's lack of criminal history that is not already accounted for in the guidelines calculation.

Second, while the defendant's cooperation and acceptance of responsibility are laudable, they do not warrant a variance. *See e.g.*, *United States v. Diaz-Lugo*, 963 F.3d 145, 153 (1st Cir. 2020) ("[W]hen a defendant's cooperation, though earnest, leads only to a dry hole, a sentencing court does not abuse its discretion by failing to vary downward on account of that cooperation."). Most significantly, Pervez's admission of guilt is already reflected in his guideline reduction for acceptance of responsibility. *See* USSG § 5K2.0(d)(2) ("[T]he court may not depart from the applicable guideline range based on . . . [t]he defendant's acceptance of responsibility for the offense, which may be taken into account only under § 3E1.1."). Pervez's guilty plea alone does not warrant a downward variance. *Cf.* USSG § 5K2.0(d)(4) ("[A] departure may not be based merely on the fact that the defendant decided to plead guilty or to enter into a plea agreement, but a departure may be based on justifiable, non-prohibited reasons as part of a sentence that is recommended, or agreed to, in the plea agreement and accepted by the court."). Put simply, the guidelines already account for Pervez's acceptance of responsibility and there is nothing about Pervez's acceptance here that makes this an "exceptional case" warranting a sentencing reduction. *See* U.S.S.G. § 5K2.0(a)(3); *United States v. Brown*, 899 F.2d 94, 97 (1st Cir. 1990)

("[I]f a circumstance has been considered [but the Sentencing Commission], a departure may be grounded thereon 'if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense of conviction.'" (citation omitted)).

Finally, the defendant argues a variance is warranted because, since he was caught in 2017, "he remained employed to provide for his children," that he "was a dutiful husband and father," and "never ran afoul of the law." ECF No. 15 at 3. But compliance with the law is a bare minimum—not a reason for a variance. Nor do Pervez's family circumstances warrant a variance. Unfortunately, "[t]he disintegration of existing family life or relationships . . . is to be expected when a family member engages in criminal activity that results in a period of incarceration." *United States v. Rodriguez–Velarde*, 127 F.3d 966, 968 (10th Cir. 1997) (internal quotation marks omitted). Regardless, any guideline reduction based on Pervez's compliance with the law since his fraud was discovered is already accounted for in the parties' pre-indictment agreement that Pervez plead to an information charging one count of bank fraud and not other crimes supported by the evidence—such as aggravated identity theft or money laundering—that would increase the guideline range. *See e.g.*, PSR ¶¶ 11-14 nn.1, 2 (describing Pervez using deceased customers' means of identification to fraudulently obtain funds, transfers of those funds in amounts exceeding $10,000, and the concealment of those funds through more than $1 million in inter-account transfers); 18 U.S.C. §§ 1028A(a)(1), 1956, 1957.[3]

Pervez's "history and characteristics" do not warrant a downward variance; the Court should impose a guideline sentence.

---

[3] *See also United States v. Jimenez*, 507 F.3d 13, 22 (1st Cir. 2007) ("[T]he word 'person' in the phrase 'means of identification of another person' includes persons deceased.") (quoting 18 U.S.C. § 1028A(a)(1)); *United States v. Richard*, 234 F.3d 763, 770 (1st Cir. 2000) ("Although 18 U.S.C. § 1957 does not define when money becomes "proceeds," [other circuits] have held that 'proceeds are derived from an already completed offense, *or a completed phase of an ongoing offense*.'") (citations omitted).

2. <u>The need to provide restitution does not warrant a downward variance.</u>

The defendant also argues that probation is warranted because if "imprisoned, it is highly unlikely that he will be able to pay restitution in a reasonably prompt manner." ECF No. 15 at 5. To be sure, Pervez has substantial assets and is better positioned to pay restitution than many defendants. *See* PSR ¶¶ 61-62. And Congress has directed courts to consider "the need to provide restitution to any victims of the offense" when imposing sentence. 18 U.S.C. § 3553(a)(7).

But, as several courts have observed, a sentencing approach "where prison or probation depends on the defendant's economic status, is impermissible." *United States v. Engle*, 592 F.3d 495, 505 (4th Cir. 2010) (citing cases); *see also* USSG 5H1.10 ("Socio-Economic Status" is "not relevant in the determination of a sentence"). Though many courts were confronted with this issue prior to *Booker*, "the change wrought by *Booker* was [not] so great that it permits district courts to rest a sentencing decision exclusively on such constitutionally suspect grounds." *Id.* As one pre-*Booker* court observed, "[a]llowing sentencing courts to depart downward based on a defendant's ability to make restitution would thwart the intent of the guidelines to punish financial crimes through terms of imprisonment by allowing those who could pay to escape prison. It would also create an unconstitutional system where the rich could in effect buy their way out of prison sentences." *United States v. Seacott*, 15 F.3d 1380, 1389 (7th Cir. 1994).

The government agrees, however, that the Court should consider the need to provide restitution in imposing sentence. But it should not do so through a variant sentence. Rather, as laid out in the PSR, the defendant has substantial assets, including $24,000 in liquid assets and two houses—with a combined value of more than $1.3 million and in which he has approximately $510,000 in equity. PSR ¶ 61. The Court should therefore order Pervez to make

a substantial lump sum payment of *at least* $24,000.[4] In addition, Pervez's equity in his two houses exceeds the restitution amount. Pervez could make additional payments toward restitution by selling or refinancing one or both of his residences. Pervez's access to these assets should be reflected in the restitution payment schedule. 18 U.S.C. § 3572(d)(2) (where immediate payment of restitution cannot be made, "the length of time over which scheduled payments will be made . . . *shall be the shortest time in which full payment can reasonably be made*" (emphasis added)).

Put simply, the defendant has assets sufficient to satisfy his restitution obligation. A downward variance is not needed—or warranted—to ensure that restitution is paid "in a reasonably prompt manner."

   3.  <u>A 41-month sentence is appropriate.</u>

The defendant committed a serious crime. This was not a case where the defendant was driven to crime because of his life's circumstances. Pervez had a respectable well-paid job as a bank manager. PSR ¶ 56. Despite this, he executed a sophisticated scheme to abuse his position and authority and steal bank customer's identities and defraud the bank and those customers of nearly half a million dollars. Pervez also took extensive measures to cover his tracks. Rather than open every fraudulent account himself, he sometimes directed his subordinates to do so. PSR ¶ 10. Pervez then transferred his fraud proceeds through multiple accounts that he controlled—making more than $1 million in inter-account transfers—and used some accounts as "holding accounts" for money fraudulently obtained from other accounts before transferring his

---

[4] Immediate lump-sum restitution payments are the default unless the interests of justice require otherwise. *E.g.*, 18 U.S.C. § 3572(d)(1) ("A person sentenced to pay . . . restitution[] *shall make such payment immediately*, unless, in the interest of justice, the court provides for payment on a date certain or in installments." (emphasis added)).

proceeds out of the bank into other accounts he controlled. *See* PSR ¶¶ 11-12, 14 nn.1, 2. All of this making it harder to trace the money back to his fraud.

A sentence of 41 months' imprisonment reflects the seriousness of this offense and will promote respect for the law and deter the defendant and other would-be fraudsters from committing similar crimes. This sentence is at the bottom of the guideline range and, as discussed already, appropriately accounts for the defendant's personal circumstances. A 41-month sentence is sufficient, but not greater than necessary, to serve the purposes of the statutory sentencing factors. Such a sentence is accounts for the defendant's individual circumstances while assuring just punishment for a serious crime and should be imposed in this case.

### 4. Conclusion

For these reasons, the Court should deny the defendant's motion for a variance and sentence the defendant to 41 months' imprisonment.

Respectfully submitted,

JOHN J. FARLEY
Acting United States Attorney

By: /s/ Matthew T. Hunter
Matthew T. Hunter
Assistant U.S. Attorney
Bar No. 682921 (MA)
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
(603) 225-1552
Matthew.Hunter@usdoj.gov

Date: November 12, 2021